[In Bank. — September 22, 1883.]

## L. F. MOULTON, RESPONDENT, v. W. H. PARKS, ET AL., APPELLANTS.

PRACTICE — PLEADING — FICTITIOUS NAMES — EMINENT DOMAIN — CONSTITUTIONAL LAW. — An action against Parks, Davis, Perdue, Van Arsdale, Santee, Ohyler. Leary, John Doe, and Richard Roe. to enjoin them from further maintaining a dam constructed in Colusa County, and for damages. The dam was first built by defendant Parks, under a contract awarded to him by the board of supervisors of Sutter County, and under the plans of the Engineers of Levee District No. 5, created under the provisions of the act of the legislature of March 25, 1868. Defendants Perdue, Van Arsdale, and Davis were members of the board of supervisors, and participated in these proceedings. Perdue and Van Arsdale signed the contract with Parks. After the commencement of this action the dam was swept away. The court found that subsequently Swamp Land Reclamation District No. 226 was created under the Act of March 28, 1868. The defendant Parks was made a trustee of the district. The defendants Davis, Ohyler, and Leary were members of the board of supervisors of Sutter County when the district was organized. After the commencement of the suit the dam was rebuilt under the direction of the trustees of the reclamation district, and was being maintained when the suit was tried and determined. The court below granted an injunction to prevent the maintainance of the dam, and awarded costs against all of the defendants. *Held*, 1. When it appears from the complaint that certain of several defendants have been sued by fictitious names, and no substitution of the true names has been made, a general appearance for defendants is an appearance for only those who were sued and served by their proper names. 2. No judgment should have been rendered against the defendants Ohyler and Leary because they had no connection with the erection or main-

tainance of the dam prior to the commencement of the action. If the subsequent rebuilding connected them with the original unlawful act, there should have been a supplemental pleading setting forth the facts. 3. The finding that Davis was a member of "the board of supervisors" and participated in "the proceedings" which resulted in the unlawful contract, does not fix upon him a liab'lity for resulting damages. *Non constat*, that he favored the unlawful contract. 4. The board of supervisors of Sutter County had no power, by virtue of the Act of March 25, 1868, to establish a levee district or cause levees to be constructed in the county of Colusa. 5. The Act of March 25, 1868, is unconstitutional.

APPEAL from the judgment and decree of the Tenth District Court, county of Colusa.

*Belcher & Belcher*, and *Van Clief & Cowden*, for Appellants.

*A. L. Hart*, for Respondent.

The facts are stated in the opinion of the court.

McKINSTRY, J.—In his complaint plaintiff alleges "that he is ignorant of the true names of the defendants above designated as John Doe and Richard Roe, and therefore has thus designated them, and prays that when their true names are discovered the pleadings and proceedings herein may be amended by inserting such names in the place and stead of the names herein used to designate such defendants."

The "defendants" filed an answer.

The record does not show that the true names of the defendants designated in the complaint as John Doe and Richard Roe have been discovered, nor have the pleadings and proceedings herein been amended by substituting any names for the fictitious names. Did the complaint not show that the names John Doe and Richard Roe were fictitious names, we might hold perhaps that the persons, whomsoever they were, who appeared and answered as John Doe and Richard Roe were bound by the judgment—they having failed to plead the misnomer or to respond in their real names to the allegations made against them. But as the record reads we construe the answer to be the answer of those of the defendants sued by their proper names, to wit: W. H. Parks, Eli Davis, W. H. Perdue, A. B. Van Arsdale, G. W. Santee, George Ohyler, and James T. Leary, and the injunction as operative only against such persons, their servants, etc.

The complaint was filed January 13, 1875.

It avers that the plaintiff now is, and for more than two years last past has been, the owner and in possession of a tract of land containing one hundred and fifty-eight acres, situated in the county of Colusa, which tract is specifically described; that the land has been held and possessed by plaintiff for farming, grazing, and fruit-growing purposes, and is of the value of five thousand dollars for such purposes; that plaintiff has and for more than a year past has had on said land a dwelling-house, usually occupied by plaintiff's tenants and employees, about one half mile of fence, a well, corrals, and an orchard of fruit-bearing trees of the value of eight hundred dollars.

The foregoing allegations of the complaint are denied by the answer, but the court below found them to be true, and the evidence is not before us.

The complaint further avers that plaintiff's land is situated between Butte Creek and the Sacramento River, above where Butte Slough puts out of said river; that said slough puts out of said river below plaintiff's land, less than a mile therefrom, and running in a southeasterly direction to the mouth of Butte Creek, flows thence in a southerly direction to and into said river, at a point more than twenty miles south of and below plaintiff's land; that Butte Creek rises and has its source more than forty miles northeast of plaintiff's land, and flows in a southwesterly direction and into Butte Slough at a point on said slough about two and one half miles southeast from plaintiff's land; that Butte Creek and Butte Slough, from their point of confluence with each other, and the said Butte Creek from a point at least twenty miles northeast of plaintiff's land, to such confluence, flow through a basin of low land, which basin is bounded on the west by a strip of high land from one to three miles in width, extending along the east bank of the Sacramento River from a point on said river about thirty miles above and north of where said Butte Slough puts out of said river to a point where said slough enters said river, and on the east by the high lands adjacent to the Butte Mountains, and the high lands along the west bank of the Feather River — which said basin has an average width of about two miles; that during the winter and spring months in each and every year large quantities

of water flow through said basin, slough, and creek, filling their banks in said basin and overflowing the same, and the waters from the Sacramento River above said high land find by natural means their way into said basin, so that the water flowing into and in said basin during said months is in volume double that of the main Sacramento River at any point opposite said basin, and said waters are discharged through said creek, slough, and basin into the Sacramento and Feather Rivers more than twenty miles south of and below plaintiff's land.

The answer admits the allegations of the complaint last set forth, except that the defendants deny that Butte Slough runs to the mouth of Butte Creek, or into the Sacramento River at any point; deny that Butte Creek runs into Butte Slough, or that there is any junction or confluence of said creek and slough, "except that both run into the same large basin of tule and swamp lands"; alleged that the water flowing into or through the basin described in the complaint is in volume not more than *one tenth* of the water of the main Sacramento, and deny that the waters of the basin described in the complaint, or any part thereof, are discharged from the Sacramento or Feather River through said creek or slough at any point south of the head of said slough.

The court found that Butte Slough runs to the mouth of Butte Creek, and flows thence in a southerly direction "to and into the tules of Sutter County" at a point more than five miles south of and below plaintiff's land; that Butte Creek flows into Butte Slough at a point on said slough about two and one half miles southeast of plaintiff's land; that Butte Creek and slough from the point of their confluence flow through the basin described in the complaint and discharge their waters into the said "tules of Sutter County," and that in the winter and spring months the waters flowing to and in said basin are in volume about equal to that of the main Sacramento at points opposite said basin.

Thus the finding of the court accords with the last recited allegations of the complaint, except that the court finds that, after their junction, Butte Creek and slough flow into the tules of Sutter County, instead of finding that Butte Creek and slough flow into the Sacramento and Feather Rivers, as alleged in the complaint.

It is averred in the complaint, and admitted by the answer, that the Sacramento River is a navigable stream from the town of Red Bluff, in the county of Tehama, a distance of seventy miles above and north of plaintiff's land, to its mouth, and from said town to said land and slough flows nearly due south; that opposite the basin described in the complaint the banks of said river are from ten to twenty feet higher than the banks of Butte Creek where said creek flows through said basin.

The complaint further alleges that plaintiff's land is part of the said strip of high land lying on the east bank of the Sacramento River, and during the winter months of every year is at times partially overflowed by the waters of said Butte Creek, and by the waters of the Sacramento River, that find their way into said basin as aforesaid, but such overflow is slight and does not interfere with the use and enjoyment of said land for the purposes for which it is owned and possessed; that said land is relieved from said overflow by the flowing off of said waters through said basin, creek, and slough, which constitute the natural and only outlet for said water; that if said slough, creek, and basin remain open, and the slough and creek unobstructed, the flood waters of each year will be drained off before any injury is done to said land of plaintiff, or the improvements thereon.

The answer denies these last averments. The court found as alleged by plaintiff, except that it found a *portion* only of plaintiff's land was part of the high land on the east bank of the Sacramento.

The plaintiff further pleads, that *defendants*, on the 17th day of October, 1874, unlawfully and wrongfully raised, constructed, and ever since have maintained, a *dam* across said basin below and within about two miles of plaintiff's land, and upon the freehold of defendants; that said dam extends from the high lands on the east side of said basin to the high land on the west side thereof, and crosses said Butte Slough and Butte Creek at points one fourth of a mile above and north of their confluence, and is of sufficient height, length, and strength to dam up and entirely obstruct, and does dam up and entirely obstruct, said creek, slough, and basin, and prevents the flow of any of said waters through the same at and below said dam, and has since

its construction and before the commencement of this action caused the waters that flow upon plaintiff's land as aforesaid to remain thereon, and the waters which naturally, and which but for said dam, would flow through said basin, creek, and slough without damage or injury to plaintiff's land, to back up, over-flow, and remain upon plaintiff's land, to his damage in the sum of one thousand dollars.

The answer denies that either of the defendants ever built the dam, except as in the answer subsequently admitted, and expressly denies that the dam has obstructed the creek, slough, or basin, or that it caused any water to flow or remain upon plaintiff's land, or that, by reason of the dam, plaintiff has sustained any damage.

The court found that the dam dammed up and obstructed the said creek, slough, and basin, and did cause the waters flowing upon plaintiff's land to remain thereon for a *greater length of time* than they would have remained except for said dam.

The plaintiff in his complaint further alleges that the defend-ants intend to and will, unless prevented by the judgment of the court, forever maintain said dam at its present height, length, and strength, and will forever by it dam up and obstruct said creek, slough, and basin, and prevent the flow of any of said waters; that if defendants so maintain and so obstruct the flow of said waters, the waters that flow upon the land of plaintiff as aforesaid will remain thereon, and the waters will back up and overflow said land, flood plaintiff's dwelling-house, wash away and destroy his fences, fruit trees, and other improvements, deposit injurious sediment, etc. These aver-ments are denied by the defendants.

Plaintiff's prayer is for an injunction, damages, and costs.

The defendants further allege in their answer that in the spring of 1871, in pursuance of an act of the legislature entitled, "an act to provide for the protection of certain lands in the county of Sutter from overflow," approved March 25, 1868, defendant W. H. Parks, together with other persons not parties to this action, claiming in good faith to be the owners and in possession of over sixty thousand acres of land in the county of Sutter, subject to overflow, petitioned the board of supervisors of said county, in accordance with said act of the

legislature, to set apart and erect into a levee district "a specified portion of said county," with defined boundaries, of which the said lands of the petitions constituted more than one half the acreage, and to place such levee district under the provisions of the act of the legislature and in accordance therewith, as "Levee District No. 5," in said county. That such proceedings were regularly had; that on or before the 1st day of June, 1871, said portion of said county, containing over one hundred thousand acres of land in one body, was duly, by said board of supervisors, erected into a levee district, and placed under the provisions of said act, and called "Levee District No. 5." That before the 15th of August, 1871, said levee district was duly and in good faith organized by the election and qualification of all such officers as are provided for by said act. That continually ever since the said petitioners, the board of supervisors, and all the officers of said district have in good faith claimed that said district was duly organized under said act, and that it became thereby a municipal corporation in fact; that the district, by its officers, has in good faith claimed the same to be such corporation; and as such has assessed the property of the district, levied and collected taxes, adopted plans for the protection of said district from overflow, contracted and paid for a large amount of work in pursuance of such plans, issued warrants and bonds for large sums of money which are outstanding and unpaid, and done all other acts which said levee district might lawfully have done.

That a part of one of the plans adopted by said board of supervisors and the engineers of said district, to protect said district from overflow, was the building of the dam or levee complained of. That the contract for said dam or levee, according to specifications fixed and prescribed by said engineers and board of supervisors, was awarded to defendant, W. H. Parks, and duly executed by him on the 23d day of July, 1874. That defendant Parks, with his servants, built said dam or levee in exact accordance with said contract and specifications, and that none of the other defendants assisted or participated in the building thereof. That defendants *Perdue* and *Van Arsdale*, as members of said board of supervisors, and *ex-officio* directors of said levee district, signed said contract for the building of said levee

(called dam in the complaint), that defendant Parks completed said levee, according to said contract, and the same was accepted by said levee district, and Parks discharged from further obligations on said contract, long before the commencement of this action.

Defendants further answered that, after the commencement of this action, and on the——day of January, 1875, said dam or levee was wholly abated and removed.

The court below found that a petition in due form was presented by defendant Parks and others not parties to this action, for the formation of a levee district, as alleged in the answer and under the act referred to, that petitioners were the owners of more than one half of the lands described in the petition, that on the 11th of March, 1871, the board of supervisors duly made and entered an order as required by law, erecting said lands into "Levee District No. 5." That the building of the dam was part of the plan adopted. That on the 23d of July, 1874, the board of supervisors, in pursuance of the act, made and entered into a contract with the defendant Parks for the construction of the dam described; that at the time of the presentation of the petition and the making of said order and the taking of the other proceedings, the defendants Perdue, Van Arsdale, and Davis "were members of said board of supervisors, and participated in the proceedings hereinbefore set forth."

That in pursuance of said contract, defendant Parks constructed on lands of said defendant and others a dam across said basin, creek, and slough, within about two miles of plaintiff's said land; that said dam was constructed from the high lands on the east side of said basin to the high lands on the west side thereof, crossing said creek and slough at points *about one fourth of a mile above and north of* their *confluence;* that said dam, as constructed, was of sufficient height, length, and strength to dam up and obstruct, and did dam up and obstruct said creek, slough, and basin so as to prevent, "except through a gate, culvert, and waste way respectively," the flow of any of the waters of the same at and below said dam, and did cause the waters flowing upon plaintiff's land as aforesaid to remain thereon for a greater length of time than they would have remained had it not been for said dam; that

said dam was constructed by said Parks in the summer and fall of the year 1874.

That on the 19th of January, 1875, and after the commencement of this action, the said dam was broken by the pressure and force of the waters standing above and north thereof, and about six hundred feet of said dam was then washed and carried away by said waters, the land above said dam, including plaintiff's said land, being thereby relieved from overflow, the water causing said overflow finding an outlet through the break in said dam.

The court also, at the request of defendants, adopted certain findings to the effect following:—

That the object of the dam or levee was to reclaim and protect from overflow by water the swamp and overflowed lands within the District No. 5; that the dam or levee was built in strict accordance with plans and specifications made by the engineer of District No. 5, and the contract of defendant Parks with said district through its proper agents, and was completed pursuant to said contract, and accepted by said district, before any injury resulted therefrom to plaintiff; that the *basin* referred to annually fills and overflows from the waters of the Sacramento River and Butte Creek to a depth that renders a portion of plaintiff's said land unfit for cultivation; and has so overflowed every year for more than twenty years, except the year 1864; and the largest proportion of the water, filling said basin, flows from the Sacramento River over its banks and through Butte Slough; that said basin fills as the river rises, and empties, if unobstructed, as the river falls.

That on the 26th day of November, 1874, the said dam backed the waters up and over the plaintiff's land, and caused the same to remain thereon until the 19th of January, 1875, and that by said dam plaintiff has been damaged in the sum of one hundred dollars.

Such were the issues made by the pleadings, and such the findings of the court so far as they responded to such issues.

The cause was tried in the District Court in January, 1876, and the court, *in addition* to the findings above set forth, found in substance as follows: That after the break in the dam, and after this action was commenced, certain lands in Sutter County

were formed and created into a swamp land reclamation district, designated as swamp land reclamation district, number two hundred and twenty-six, under and in pursuance of an act of the legislature entitled "an act to provide for the management and sale of lands belonging to the State, approved March 28, 1868, and the defendant, W. H. Parks, was thereupon duly elected one of the trustees of said reclamation district, and he then and there qualified and acted as one of said trustees. That at the time of the formation of said reclamation district, the defendants Davis, Ohyler, and Leary were the duly elected, qualified, and acting supervisors of the said county of Sutter, and have ever since constituted the board of supervisors of said county.

That the trustees of said reclamation district, the defendant Parks being one of them, afterwards and in pursuance of a plan of reclamation by them adopted, made and entered into a contract with one —— for the repair of said dam, and in pursuance of the said contract the said —— in the summer and fall of 1875, did repair said dam by rebuilding so much thereof as had been previously washed away as above stated, and. did at the same time enlarge and strengthen the whole of said dam; so that the same as repaired, enlarged, and strengthened is sufficient to dam up and obstruct the said waters as aforesaid. That the said trustees of said reclamation district ever since—the defendant Parks being one of them—have had their agents and employees upon said dam protecting and maintaining the same.

That unless restrained the said trustees will continue to maintain said dam and to keep the same in repair, and will forever thereby dam up the waters flowing through said creek, slough, and basin, so as to overflow and remain upon plaintiff's said land as aforesaid, and thereby to cause the waters to remain upon a portion of plaintiff's land for a period of at least six weeks longer each year than they otherwise would.

The judgment appealed from *enjoins the defendants*, their servants, etc., from constructing, maintaining, etc., and provides that plaintiff recover of defendants $100 damages, and $369.10 *costs*.

The findings were all filed at the same time, but, for convenience of reference, we shall style those first hereinbefore set forth

as the "original findings," and those stated to have been filed in *addition*, as the "additional findings."

The additional findings, except in so far as they are evidence of an intent on the part of defendant Parks to continue the dam, are entirely without the issues, and cannot uphold a judgment against the defendants, Ohyler and Leary. If it be conceded that the original erection of the dam was unlawful, and that Parks, Perdue, and Van Arsdale (the two last by reason of their having signed the contract with Parks), were parties to such unlawful erection, all others who aided or assisted in the work, and all who, after it was erected, either before or after the commencement of the action, aided or assisted in continuing or repairing the dam, as agents, servants, employees, or co-workers with the persons who constructed it, would of course be bound by the judgment and restraining order against Parks, Perdue, and Van Arsdale, by virtue of their connection with and relation to the defendants last named. But plaintiff ought not, under the pleadings in this action, to have a judgment for damages and costs against Ohyler and Leary, who had in no way interfered with his rights, or assisted others in interfering with his rights, prior to the commencement of the action. It is found that defendants Ohyler, Leary, and Davis were members of the board of supervisors when a "reclamation district" was formed under the Act of March 28, 1868, and when the trustees of such reclamation district let the contract for the rebuilding of the dam, in pursuance of a plan by them adopted. But if the establishment of the reclamation district so connected the defendants Ohyler, Leary, and Davis with the rebuilding of the dam — such rebuilding being conceded to be unlawful — as that they would be held to be parties to the rebuilding, the establishment of the reclamation district was a new and independent act on the part of Ohyler, Leary and Davis, in no way connected with the previous formation of a levee district (No. 5) under the Act of March 25, 1868, or with the erection of the dam thereunder; an act which occurred after the commencement of this action, and no supplemental or amended complaint was filed under which they could be tried for such subsequent act. Plaintiff was not authorized to take a judgment for damages and costs against those who, as we have seen, if they did him any wrong, did it

after suit brought, without supplemental pleading; *a fortiori* when it appears they are acting officially and independently in accordance with an act of the legislature different from the act under which the original wrong-doers claim to justify.

And even if it should be conceded, that, in consequence of the fact Ohyler and Leary having been members of the board of supervisors when the "reclamation district" was formed, etc., they should be held as the servants or co-workers of the persons who originally built the dam in maintaining and continuing it, and therefore bound by any injunction which should issue against such persons, yet, in the absence of supplemental complaint, charging them as such co-workers, and giving them an opportunity to deny the charge, no judgment for damages and costs should have been entered against them.

The judgment is therefore erroneous as to defendants Ohyler and Leary.

On the other hand, the other defendants were not entitled to defend under the Act of March 28, 1868. If it should be conceded that the original erection of the dam was unlawful, nevertheless if the Act of March 28, 1868, is a valid act, and the dam was rebuilt in strict pursuance of that act, the defendants would have been entitled to assert the facts (although the rebuilding was done after the suit was brought) by way of defense, to show that the dam ought not to be *abated, or its continuance enjoined* — had they *pleaded* the facts by supplemental answer. But they failed to do so.

Hence, under the pleadings neither was plaintiff authorized to take a judgment against defendants Ohyler, Leary, and Davis, based upon the fact that they were members of the board of supervisors when certain things were done, subsequent to the commencement of the action, nor can defendants rely as a defense upon the establishment of a "reclamation district," under the Act of March 28, 1868, after the commencement of the action.

The answer avers that defendants Perdue and Van Arsdale, as members of the board of supervisors and *ex-officio* directors of Levee District No. 5, signed a contract for the building of the dam by defendant Parks. Whether the admission that they signed the contract makes them responsible is a question here-

after to be considered. But there is no finding in the "original" findings which can be held to charge either the defendant Perdue, or Van Arsdale, or Davis. The finding is, that when the petition was presented by Parks and others, when the order was made by the board of supervisors erecting "Levee District No. 5, and when the contract was made with Parks, "Van Arsdale, Perdue, and Davis were members of said board, and participated in the proceedings." *Non constat*, but at least one of the three voted against the reception of the petition, against the order erecting the district, and against the order, if any, directing the contract to be executed. The finding fails to state who of the three favored the proceedings.

There are, therefore, no facts found which can uphold the judgment against the defendant *Davis*.

The judgment against the defendant *Santee* is clearly erroneous. The findings in no way connect Santee with any of the acts claimed to be wrongful.

It remains to inquire whether the judgment against Parks, Perdue, and Van Arsdale should be permitted to stand.

As we have seen, the court below found that the dam or levee was built in strict accordance with plans and specifications made by the engineer of District No. 5, and the contract.

It may be conceded for the purposes of this decision, that if the legislature had power to pass the Act of March 25, 1868, and that act was pursued by the supervisors and other officers whose duties are prescribed by it, and the dam was a work which they had authority to erect under the act—the plans by them adopted and carried out not being inherently defective or violative of the law—the present action cannot be maintained; that under such circumstances, any incidental damage which may have occurred to plaintiff in the prosecution or completion of a public work authorized by the State is *damnum absque injuria.* (*Green* v. *Swift*, 47 Cal. 536.)

The present Constitution of the State provides:—

"Private property shall not be taken or *damaged* for public use without just compensation having been first made to, or paid into court for, the owner." (Art. 1, § 14.) The Constitution of 1849 reads: "Nor shall private property *be taken* for public use without just compensation." (Art. 1, § 8.)

The dam was erected, and the case at bar tried by the District Court while the former Constitution was in force.

In *Green* v. *Swift, supra,* it was held that the incidental damage caused by a public work authorized by law in flooding or washing away of the soil from the land of a citizen — the work having been done in strict accordance with law, skillfully, and without malice — was not a taking of private property within the meaning of the Constitution then in operation. We have repeatedly intimated that we would follow the construction of the provisions of the former Constitution given by the highest tribunal created by that Constitution. And it may be conceded, for the purposes of this decision only, that the doctrine of *Green* v. *Swift* is applicable to the facts of the present case.

It is proper to inquire whether the erection of the dam or levee found to have damaged the plaintiff's land was authorized by the act of March 25, 1868.

The land within the *delta* above the junction of Butte Creek and Butte Slough is in Colusa County. (Pol. Code, § 3916.) The court below found that the dam, as constructed, extended from the high lands on the east side of the basin to the high lands on the west side thereof, crossing said creek and slough at points about one fourth of a mile above and north of their confluence. The portion of the dam between the creek and slough was, therefore, in Colusa County.

The act of the legislature under which defendants Parks, Perdue, and Van Arsdale seek to justify is entitled "an act to provide for the protection of certain lands in the county of Sutter from overflow." (Stats. 1867–1868, p. 316.) By its terms it confers power on the board of supervisors of Sutter to establish levee districts only within the limits of their county. (§§ 2, 21.) The board of supervisors are authorized to adopt a plan for the protection of any levee district created under the act, to divide it into sections, and to let contracts for the construction of sections of a levee or other work of protection. (§ 10.) The power to adopt a plan is not in terms limited to the adoption of a plan which shall provide for the construction of levees or other works only within Sutter County, nor is the power conferred upon the board to contract for the construction of levees without the county, unless such power is conferred by

the general terms of the grant. It may be that, in the opinion
of the board of supervisors of Sutter County, no efficient plan
for the protection of Levee District No. 5 could be carried into
effect which did not provide for the construction of a levee out-
side of the district and outside of the county, and it may be
argued that such a condition of things must have been antici-
pated by the members of the legislature, when the general power
of adopting plans, and constructing works in accordance there-
with, was given to the board.

But the board of supervisors of Sutter County had the right
to employ only such power, with respect to the adoption of plans
and construction of works, as was conferred by the act of the
legislature, and in inquiring whether the grant is limited we
should consider as well the whole act as the nature of the official
powers, under the Constitutions and laws of the supervisors, as
legislative and executive public agents.

The eighth section of the act empowers the board to take
possession of any land *within the district* that may be necessary
for any levee or work of reclamation. It also empowers the
board to take possession of any land outside the district and
within the *county* that may be necessary or proper to furnish
*material* for the construction of a levee, or other work of protec-
tion, within a district. The same section requires that if the
property, within the district or county, of which possession may
thus be taken, is private property, the board shall petition the
county judge of the county of *Sutter*, to appoint three appraisers,
etc. It may be conceded that the private proprietor may volun-
tarily surrender possession and waive damages, and that the
power to condemn includes the power on the part of the county
to accept lands, within the district or county, thus donated for
the purpose of a levee, or for the purpose of the taking of mate-
rial therefrom. There is no power conferred by the act upon the
board of supervisors to contract for the purchase of lands for a
consideration, or to levy an assessment to provide moneys to pay
for lands thus purchased. It would seem that it was not within
the contemplation of the legislature that lands should be acquired
whereon to erect levees or works of protection, or from which to
take building material, except through the employment of the
power of eminent domain (within which is included the acquisi-

tion by means of donations, which are operative by reason of the waiver of "just compensation" on the part of the private proprietor) and, as we have seen, the employment of the power of eminent domain through the supervisors is carefully limited to the *district*, where the land is taken for a levee, and to the *county* where it is taken for material.

This view is strengthened by a consideration of the nature of the office of supervisor. They are local officers. The act imposes the duty of keeping the levees and other works in repair, and of levying and collecting taxes upon all the property within the district for the purpose of raising funds to keep them in repair. If the supervisors of Sutter have power to cause to be erected and kept in repair a levee, or part of a levee, in Colusa, they have power to erect and keep in repair levees, all but one of which shall be in other counties than Sutter. It is not to be supposed that legislators closed their eyes to the complications between counties and property owners in different counties which would thus arise. Again, if the board of supervisors are authorized to include within levees large bodies of land not within the district, the effect may be a direct benefit to such lands, or portions of them, by protecting them from overflow. But the lands within the limits of the district only can be assessed for benefits conferred upon *such lands*. The legislature has no power to relieve a portion of the lands benefited. (*People* v. *Lynch*, 51 Cal. 15.) It may be said that the facts of this case do not show any of the lands without the district, to be benefited by the work. But we are now considering the interpretation to be given the Act of March 25, 1868, and may reasonably presume that the legislature did not intend that the power to adopt plans and build levees should be employed in such manner as to result in consequences which might be obnoxious, because violative of constitutional principles. (*People* v. *Parks*, 58 Cal. 624.) The establishment of an assessment district is a declaration that the only lands which will be benefited by the proposed protection works, are the lands within the district. It must be admitted it was not intended the board should include within levees lands without the district which should be benefited by the work. It will be urged, however, that the board has power to determine that lands without the district are *not* benefited by

the levees, and to include such lands within the district levees; that it is to be presumed the board had the limitation in mind, and that the levees as actually erected did not include any lands *benefited* other than the lands within the district. But whence comes the power to the supervisors of determining (after the creation of the district which itself determines that certain lands and none other will be benefited by the proposed work), that any lands—inside or outside the district—will be or will not be benefited? The argument would lead to this: By creating a levee district, the supervisors adjudge that the lands within the district will be benefited by work to be done at any places outside the district which the board shall subsequently provide for —the board reserving the entire power, by its final and conclusive judgment, of deciding that any plan it may adopt will not include any lands which will be benefited, other than the lands within the districts. In view of the other sections of the statute, the nature of the functions of supervisors, and the consequences which might follow from the adoption of the construction claimed by counsel for appellants, we ought not, in the absence of any provision of the act conferring on the board the power of extending their works beyond their county, to hold that such vast discretionary authority has been conferred on the supervisors, merely because of the clause which authorizes them generally to adopt plans, etc.

Our conclusion is that the officers of the county of Sutter had no power to cause a levee to be built in the county of Colusa.

We ad      at there are constitutional objections to the Act of March 25, 1868, not heretofore considered by the Supreme Court.

The twenty-first section of the act is mandatory. It reads:—

"Sec. 21. Whenever a petition shall be received by said board of supervisors from persons in possession of more than one half of the acres of any specified portion of said county, asking to be set apart and erected into a levee district, said board *shall at once erect* such territory into a levee district, and place it under the provisions of this act, to be called Levee District No. 1, 2, 3, and so on, as the case may be; *provided,* that it shall not be required to submit the question of tax to a vote of the people of any district so erected."

Here is an attempt to transfer to persons in possession of more than one half of the acres of any portion of the county of Sutter which *they* may specify, the power to declare that such portion of the county will be benefited by works to be erected at the expense of all the property, real and personal, within it, and to set in motion machinery for the enforcement of a tax and assessment against the owners of a minority of the acreage. The act provides for no judicial inquiry as to what lands will be benefited by a proposed work, nor does it contain any declaration by the State legislature that any specified lands will be benefited, nor provide that such declaration may be made by the supervisors, or by any officer or agent of the State or county. When those in possession of more than half of the land by them specified file a petition they assert that *they* will be benefited by the proposed work, and they also attempt to determine that the owners of other lands will be benefited. They determine that the work will benefit all, and attempt to levy a tax upon others as well as themselves, which shall be expended in work of *joint* as well as *several* benefit. No man can be a judge in his own cause, and no man's property can be taken without due process of law.

With respect to assessments for local improvements Mr. Justice Cooley says: "The district within which the tax shall be laid may be determined in either of two modes; (1) the legislative authority either of the State, or, when properly organized, of the municipality, may determine over what territory the benefits are so far diffused as to render it proper to make all lands contribute to the cost; or, (2) the assessors or commissioners who, under the law, are to make the assessment, may have the whole matter submitted to their judgment, to assess such lands as in their opinion are specially benefited and ought therefore to contribute to the cost of the work." (On Taxation, 449.)

It is manifest that the act of the legislature we are considering does not provide for the creation of an assessment district in either of the two modes above pointed out. Under the twenty-first section, if valid, the levee district, which is the assessment district, is established neither by the legislative authority of the State or county, nor by assessors or commis-

sioners authorized to ascertain what lands will be benefited by the proposed levees or works of protection. The section provides that on the presentation of a petition the board of supervisors "shall at once proceed" to erect the territory described in the petition into a levee district, "and place it under the provisions of this act." The supervisors have no discretion to reject the petition, or to modify or change the boundaries of the district, or otherwise to exercise any judgment with reference to the expediency of fixing the limits of the assessment district where the petition fixes them. One man in possession of 3,000 acres of land, which he believes will be protected by a levee, may thus decree that 5,999 acres (of which 2,999 are owned by one hundred other men) will be benefited by a levee, and arbitrarily adjudge the one hundred to pay almost half of the expense of building it. Under our Constitution there never has been power in the legislature to delegate such legislative functions to interested individuals.

By entering into the contract with defendant Parks for the construction of the levee, the defendants Perdue and Van Arsdale aided and abetted the former in his unlawful act.

The judgment against defendants Parks, Perdue, and Van Arsdale should be affirmed; against Santee, Ohyler, Davis, and Leary should be reversed.

Ordered that the judgment of the District Court be modified by reversing and setting aside so much thereof as adjudges that plaintiff have and recover of and from defendants Davis, Santee, Ohyler, and Leary the sum of one hundred dollars damages and three hundred and sixty-nine dollars costs, and that the said judgment of the District Court be in all other respects affirmed.

Ross, J., SHARPSTEIN, J., and MYRICK, J., concurred.

McKEE, J., and THORNTON, J., concurred in the judgment.