[L. A. No. 5565. In Bank.—September 22, 1920.]

MARTIN MULVILLE, Appellant, v. CITY OF SAN DIEGO (a Municipal Corporation), et al., Respondents.

[1] MUNICIPAL CORPORATIONS—POWER TO ACT BEYOND BOUNDARIES.—The power of a municipality to act outside its boundaries does not exist unless expressly granted by the legislature, or necessarily or fairly implied in or incident to the powers expressly granted, or essential to the declared objects and purposes of the corporation.

[2] ID.—CONSTRUCTION OF PUBLIC WORKS OUTSIDE BOUNDARIES—ISSUANCE OF BONDS OF MUNICIPAL IMPROVEMENT DISTRICT—APPLICABILITY OF RULE.—The rule that a municipality is competent to act beyond its boundaries only in those cases in which it is so empowered by legislative authority applies in determining whether or not bonds of a municipal improvement district may be issued, the proceeds of which are to be used in the construction of public works outside of the boundaries of the district.

[3] ID.—MUNICIPAL IMPROVEMENT DISTRICT—CONSTRUCTION OF PUBLIC IMPROVEMENTS—SCOPE OF ACT OF 1915—IMPROVEMENTS WHOLLY WITHIN BOUNDARIES.—The act of the legislature providing for the formation of districts within municipalities for the acquisition or construction of public improvements, works and public utilities *"therein"* (Stats. 1915, p. 99), denies the power to construct or

----

1. Right of municipality to exercise corporate powers beyond municipal limits, notes, 7 Ann. Cas. 521; 10 Ann. Cas. 132; Ann. Cas. 1912C, 938.

acquire such an improvement beyond the boundaries of the district, thus preventing the application of the doctrine of implied power to act beyond such boundaries, assuming that the doctrine could be extended to the construction of an amusement pier which extended into the ocean beyond the boundaries of the improvement district.

[4] STATUTORY CONSTRUCTION — LEGISLATIVE ENACTMENT — ORDINARY MEANING OF WORDS.—In construing a legislative enactment the intent of the legislature must be determined primarily by attributing the ordinary and popular sense to the words of the statute where they are free from ambiguity and the result is not absurd, and this must be done even though it appear probable that a different object was in the mind of the legislature.

[5] MUNICIPAL CORPORATIONS—NATURE OF DISTRICT AUTHORIZED BY ACT OF 1915 — STRICT CONSTRUCTION — LEGISLATIVE GRANT.—The municipal improvement district authorized by the act of 1915 is nothing more than a taxing district within a municipality, and being a delegation of control over local assessment proceedings, the grant must be closely construed, since the power of special taxation is restricted to the plain language of the statute.

APPEAL from a judgment of the Superior Court of San Diego County.  S. M. Marsh, Judge.  Reversed.

The facts are stated in the opinion of the court.

Sweet, Stearns & Forward for Appellant.

T. B. Cosgrove, City Attorney, and M. R. Thorp, Deputy City Attorney, for Respondents.

LENNON, J.—Plaintiff, as a resident, voter, and taxpayer in municipal improvement district No. 1, of the city of San Diego, instituted this action for the purpose of enjoining the issuance and sale of certain bonds of said improvement district and of having all proceedings in relation to the organization of the district and the issuance of the bonds canceled and declared null and void.

Proceeding under the provisions of chapter 79 of the statutes of California of 1915, page 99, the common council of the city of San Diego organized the district above referred to and the qualified electors therein voted to authorize, and the city council proceeded to issue and sell, bonds of said district to the amount of one hundred and twenty-five thousand dollars for the purpose of paying the costs and expenses

of the acquisition and construction of certain improvements. These certain contemplated improvements are to be located on the waterfront of the city of San Diego and a large portion of them will, when constructed, be situated outside of the described boundaries of municipal improvement district No. 1. According to the findings of the trial court the improvements in question. consist of a pleasure-pier and loose-rock jetty, each lying within the exterior boundaries of the district for a distance of about fifty feet and extending approximately seven hundred and fifty feet beyond the exterior boundary lines of said district; a second loose-rock jetty, one hundred feet of which will be located within and one thousand nine hundred feet without the said exterior boundary lines; eight groins, all of which will commence at the exterior boundary lines of the improvement district and lie entirely outside of said exterior boundary lines; and certain other improvements located wholly within the district. The trial court rendered a judgment holding the proceedings and issuance of the bonds to be valid and according to law, from which judgment plaintiff appeals.

The first question to be determined is whether improvements must be physically within the boundaries of the improvement district which assumes the indebtedness for the construction thereof, or whether such public works may be situated partially or wholly outside of the exterior boundary lines of the district provided that, as the trial court found to be the case here, the benefits to result from said improvements accrue wholly or principally to the district or the property within said district.

In support of the judgment, counsel for respondent cite cases illustrative of the principle that a particular structure is not transformed and deprived of its "public" or "municipal" character merely by reason of the fact that it is constructed outside of the boundary lines of the municipality which it benefits. (*People* v. *Kelly,* 76 N. Y. 475; *In re Mayor,* 99 N. Y. 569, [2 N. E. 642].) Such cases are inapplicable to the case at bar, for the public nature of the improvements in question here is not in dispute. The mere fact that a structure erected outside of a municipal improvement district may be a "public improvement" is not determinative of the question of the existence of the power to form such a district for the purpose of raising funds for

the erection of such a "public improvement" outside of the district. That is to say, while it is not and cannot be questioned that an amusement pier is an improvement of a public nature, nevertheless, the point is made that, obviously, there must be some limit beyond which a municipal improvement dstrict cannot acquire or construct improvements, however public the improvements may be, and, if the operations of such district are restricted by law to the territory within the described boundaries of the district, then such a district, whether bordering on the sea or not, cannot be formed for the acquisition, construction, or maintenance of those public improvements which are of such a character that they must, by their very nature, extend beyond the physical area of the district.

In general, a municipality is competent to act beyond its boundaries only in those cases in which it is so empowered by legislative authority and it is necessary, in passing upon the validity of acts of a municipality performed beyond its boundaries, to look to the general laws and municipal charter for the requisite authority. In certain instances, owing to the urgency of extreme expediency or necessity, express authority is dispensed with and the power of the municipality to perform certain acts beyond its boundary is implied as incidental to the existence of other powers expressly granted. Thus, it has been held that, where a municipality has power to construct sewers, it may, as an implied incident to such power, extend the same beyond its boundaries when necessary or manifestly desirable. (*McBean* v. *City of Fresno,* 112 Cal. 159, [53 Am. St. Rep. 191, 31 L. R. A. 794, 44 Pac. 358]; *City of Coldwater* v. *Tucker,* 36 Mich. 474; *Cochran* v. *Village of Park Ridge,* 138 Ill. 295, [27 N. E. 939]; 4 McQuillin on Municipal Corporations, sec. 1434.) McQuillin, in his work on Municipal Corporations, states the rule as follows: "The general rule is that without legislative grant the authority of the municipal corporation is confined to its own area, hence its acts and ordinances have no force beyond its corporate limits. Thus, in the absence of such grant the municipality cannot open a street, repair a highway, grade an avenue, or aid in the construction of a plank road or bridge beyond its boundaries. Sometimes authority to act outside of the municipal boundaries may be implied on the ground of necessity, as for example, to obtain outlets

for sewers and drains. . . . Likewise a municipality possessing power to supply its inhabitants with water, may acquire for that purpose, a water supply without its territory. Certain municipalities have been held to be authorized to supply light and water to points beyond their limits.'' (4 McQuillin on Municipal Corporations, sec. 1824.) **[1]** Therefore, in the case of a municipality, power to act outside of the boundaries of the municipality is dependent entirely upon legislative grant; it does not exist unless expressly granted, necessarily or fairly implied in or incident to the powers expressly granted, or essential to the declared objects and purposes of the corporation. (*Hyatt* v. *Williams*, 148 Cal. 585, 587, [84 Pac. 41]; *South Pasadena* v. *Pasadena Land etc. Co.*, 152 Cal. 579, 590, [93 Pac. 490].) **[2]** By analogy the same rule applies in determining whether or not bonds of a municipal improvement district may be issued, the proceeds of which are to be used in the construction of public works outside of the boundaries of the district.

The proceedings attacked in the instant case were taken under a statute (Stats. 1915, c. 79, p. 99) entitled ''An act to provide for the formation of districts within municipalities for the acquisition or construction of public improvements, works and public utilities *therein;* for the issuance, sale and payment of bonds of such districts to meet the cost of such improvements; and for the acquisition or construction of such improvements.'' Section 1 of this act provides: ''Any portion of a municipality incorporated under the laws of this state may be formed into a municipal improvement district for the purpose of creating an indebtedness, to be represented by bonds of said district, the proceeds from the sale of which shall be used for the acquisition or construction *therein* of any public improvement work or public utility which such municipality is authorized by law to acquire or construct.'' Section 2 of the same act provides that the ordinance of intention, required by the act, shall contain, in addition to other information, a description of the exterior boundaries of the proposed municipal improvement district, and ''a general description of the improvement work or public utility proposed to be acquired or constructed *therein.''* (Italics ours.)

The statute does not expressly grant the power to form an improvement district for the purpose of erecting or acquir-

ing public works or utilities outside of the district, nor does the construction of a pleasure-pier come within the rule applicable to the construction of outlets for sewers or sources of supply of light and water, for it cannot be classified as a matter of necessity or extreme expediency. [3] We are of the opinion that the statute in question goes further and, in effect, denies the power to construct or acquire such an improvement beyond the boundaries of the district, thus preventing the application of the doctrine of implied power to act beyond those boundaries, assuming that that doctrine could be extended to improvements of the nature here contemplated. [4] In construing a legislative enactment the intent of the legislature must be determined primarily by attributing the ordinary and popular sense to the words of the statute where they are free from ambiguity and the result is not absurd, and this must be done even though it appear probable that a different object was in the mind of the legislature. (*Eureka* v. *Diaz,* 89 Cal. 467, 469, [26 Pac. 961]; *Smith* v. *Union Oil Co.,* 166 Cal. 217, 224, [135 Pac. 966]; *Sacramento* v. *Glann,* 14 Cal. App. 780, 789, [113 Pac. 360].) A liberal construction does not mean enlargement of the plain provisions of the law. (*In re Jessup,* 81 Cal. 408, 419, [6 L. R. A. 594, 21 Pac. 976, 22 Pac. 742, 1028].) It is clear that the words "public improvement work," and "public utility," as used in the statute do not refer to intangible benefits to be derived from a public work, but they obviously designate a material structure which is to be *constructed* or *acquired.* The act thrice mentions that these public works or utilities are to be "therein," the accepted meaning of which is "in that place" (Webster's Dictionary; Standard Dictionary), and this word appears in such context as to compel the conclusion that the "place" to which it refers is the improvement district provided for by the act. The term "therein" was judicially interpreted in the case of *In re Streets and Alleys in Borough of Parkesburg,* 124 Pa. St. 511, [17 Atl. 27], where a general borough law gave the authorities of the boroughs power to enact and ordain streets and alleys "therein." The court there said: "By streets, alleys, etc., 'therein' is meant such only as begin and end within the limits of the municipality. This exclusive provision does not extend to public roads, laid out through or to a point within the limits of a borough of which

only a part is within the borough lines.'' The statute now under consideration therefore provides that an improvement district can be formed for the construction or acquisition of public works or utilities within the limits of the district, that is to say, which begin and end within the boundaries of the district. A structure physically without the district, in whole or in part, may be an improvement *thereto,* but it is not an improvement *therein.*

[5] Our conviction of the correctness of the above construction is reinforced by the fact that we are not dealing with a municipality or *quasi*-public corporation, for the municipal improvement district authorized by the statute is nothing more than a *taxing* district within a municipality. The power of a municipality to form such a district arises solely from legislative grant. This grant, being a delegation to municipalities of control over local assessment proceedings, must be closely construed, for it is well settled that the power of special taxation is restricted to and can extend no further than the plain language of the legislative enactment upon which it is based. (*Ex parte Unger,* 22 Okl. 755, [132 Am. St. Rep. 670, 98 Pac. 999] ; *Hyatt* v. *Williams,* 148 Cal. 585, [84 Pac. 41] ; 5 McQuillin on Municipal Corporations, sec. 2052.) The necessity of firmness and strictness on the part of the judiciary in cases involving the exercise of the power of special taxation was expressed as follows in the case of *Washington Avenue,* 69 Pa. St. 352, 364, [8 Am. Rep. 255] : ''The examination I have just made into the power of special taxation, it seems to me, tends to confirm and strengthen what was so well reasoned in *Hammett* v. *City of Philadelphia,* 65 Pa. St. 146, [3 Am. Rep. 615]. Indeed, I consider it a fortunate circumstance that that case came up, for it led to an inquiry into the power of special taxation, which was in danger of running wild by insensible degrees, and leading, before we had become aware of it, into the exercise of a bastard power, dangerous to the right of private property, and violative of the provision in the Bill of Rights, placed there for its protection. In questions of power exercised by agents, it is sometimes the misfortune of communities to be carried, step by step, into the exercise of illegitimate powers without perceiving the progression, until the usurpations become so firmly fixed by precedents it seems to be impossible to recede or break through them.'' The

case of *Moulton* v. *Parks*, 64 Cal. 166, [30 Pac. 613], affords a good illustration of the rule of strict construction which must be applied to legislative enactments permitting proceedings which are in their nature *in invitum*. In that case the act under consideration was "an act to provide for the protection of certain lands in the county of Sutter from overflow," and by its terms it conferred power on the board of supervisors of the county of Sutter to establish levee districts within that county. The act also provided that the board of supervisors of Sutter County were authorized to adopt a plan for the protection of any levee district created under the act. In construing the act the court said: "The power to adopt a plan is not in terms limited to the adoption of a plan which shall provide for the construction of levees or other works only within Sutter County, nor is the power conferred upon the board to contract for the construction of levees without the county, unless such power is conferred by the general terms of the grant. . . . The eighth section of the act empowers the board to take possession of any land *within the district* that may be necessary for any levee or work of reclamation. It also empowers the board to take possession of any land outside the district and within the *county* that may be necessary or proper to furnish *material* for the construction of a levee, or other work of protection within a district. . . . The act imposes the duty of keeping the levees and other works in repair, and of levying and collecting taxes upon all the property within the district for the purpose of raising funds to keep them in repair. If the supervisors of Sutter have power to cause to be erected and kept in repair a levee, or part of a levee, in Colusa, they have power to erect and keep in repair levees, all but one of which shall be in other counties than Sutter. . . . Our conclusion is that the officers of the county of Sutter had no power to cause a levee to be built in the county of Colusa." It has been suggested that in the instant case the authority conferred by the act to establish an amusement pier within the designated district is but an idle grant of power in that respect if the pier must be constructed wholly within the district. In other words, that no effective plan for the establishment of an amusement pier could be put into operation and effect which did not provide for the construction of such a pier beyond and outside the limits of

the improvement district. The answer to this suggestion is found in the case of *Moulton* v. *Parks, supra,* where it was said: "It may be that, in the opinion of the board of supervisors of Sutter County, no efficient plan for the protection of Levee District No. 5 could be carried into effect which did not provide for the construction of a levee outside of the district and outside of the county, and it may be argued that such a condition of things must have been anticipated by the members of the legislature, when the general power of adopting plans, and constructing works in accordance therewith, was given to the board. But the board of supervisors of Sutter County had the right to employ only such power, with respect to the adoption of plans and construction of works, as was conferred by the act of the legislature, and in inquiring whether the grant is limited we should consider as well the whole act as the nature of the official powers, under the constitution and laws, of the supervisors as legislative and executive public agents." It is quite conceivable that, in the instant case, the legislature, in placing a new method of local improvement assessment within the field of municipal control, intended the restriction as to the location of the improvements as a precautionary limitation upon the delegation of the taxing power. At any rate, whatever the legislative purpose, it is apparent that the formation of a district and issuance and sale of bonds thereof with the purpose of using the proceeds for the construction of public works outside of the boundaries of the district is a proceeding wholly without the terms of the statute embodying the legislative grant.

Appellant also contends that the city of San Diego itself lacks the power to construct a pleasure-pier in the Pacific Ocean at the particular point where the improvements now in question were to be constructed. The argument is therefore advanced that the proceedings are invalid for the further reason that the statute permits the organization of a municipal improvement district for the purpose of the acquisition or construction of only such improvements as the municipality itself is authorized by law to acquire or construct. Inasmuch as we hold that there was no authority to organize the district for the purpose of constructing public works outside of the district, it is unnecessary to determine

the question of whether or not the city itself has power to construct the improvements.

In view of the fact that by far the greater part of the improvements (i. e., over nine-tenths of the pleasure-pier and loose-rock jetties and all of the eight groins), would lie outside of the boundaries of the improvement district, the relief prayed for must be granted, because, as we hold, the act provides for and permits only such public improvements as may be constructed wholly within the district. The judgment is reversed.

Wilbur, J., Shaw, J., and Angellotti, C. J., concurred.

OLNEY, J., Dissenting.—I dissent. The facts are that a part of the city of San Diego bordering on the ocean was organized into a municipal improvement district. The city was authorized by statute to issue bonds of the district for the purpose of supplying the funds with which to construct "therein" an improvement of the character of that involved here, to wit, a wharf or pier. The city sought to issue bonds of the district for the purpose of making this improvement, and its action is now nullified solely because the pier projects out into the ocean beyond the legal boundary of the improvement district, so that it is not physically wholly "therein" with respect to the district. I cannot agree with such a narrow and absolutely literal construction of the statute. The main opinion concedes that if the improvement had been a sewer instead of a pier it might have projected without the limits of the district, into the ocean, for instance, and still would have been an improvement within the district within the meaning of the statute. Why the difference?

In *Cochran* v. *Village of Park Ridge*, 138 Ill. 295, 300, [27 N. E. 939, 940], the court, in overruling the objection to a village constructing a sewer extending beyond its limits, said:

"But what is the object and true scope of the improvement under consideration? Is it one within or outside of the incorporated limits of the village? The object was to furnish sewerage for the inhabitants of the village. The improvement was for the benefit of those residing within the incorporated limits of the village, and for them alone. But in order to make the sewer a success,—in order to make

the improvement of any benefit to any person in the village—it must have an outlet. No outlet could be found within the incorporated limits. It became, therefore, absolutely necessary to extend the sewer a short distance outside of the incorporated limits in order to allow an outlet. In order to carry out the true scope and object of the ordinance providing for the improvement it became necessary to expend money outside of the incorporated limits of the village. But it does not follow because that is the case, that the assessment here is made for an improvement outside of the village. The construction of the sewer from the incorporated limits of the village to the Desplaines River is not an improvement in that territory, but is one for the village, rendered a necessity from the geographical condition of the land upon which the village is located.''

The construction of the pier from the dry land within the district out into the ocean is not an improvement of the ocean or the land beneath it, but is one for the district, and is one whose projection beyond the shore line which is the legal limit of the district is necessary if its object is to be accomplished and if it is to be of any benefit to the district. In every sense but a most technical one, a pier or wharf projecting out into the ocean over no man's land is a part of and within the territory on the shore from which it starts.

The main opinion proceeds on the hypothesis that if the legal limits of the district had been extended out into the ocean to or beyond the end of the pier, the proceedings under attack would have been valid. But requiring the limits of the district to be so extended is a wholly futile thing. The district is in effect nothing more than an assessment district. The extension of its limits out into the ocean would mean merely the inclusion within the district of lands beneath the ocean, belonging to the state and incapable of private ownership, and upon which no assessment could by any possibility be laid. For the purposes of assessment, and that is the real purpose of the district, the situation would not be changed one iota by the inclusion of these lands.

LAWLOR, J., Dissenting.—I concur in the dissenting opinion of Mr. Justice Olney.

It is not to be questioned that within the purview of the act a district bordering on the ocean may be formed for

an amusement pier. Manifestly, the authority to create such an improvement is barren if the structure may not project beyond the shore line, provided, of course, it be limited to the boundaries of the city of San Diego (Stats. 1889, p. 644). The fact that the pier is erected over the water instead of above the shore line would not, in any true sense, constitute an additional burden on the taxpayers. It would be more in keeping with the legislation to connote the term "therein" according to the character of the particular improvement so that in such a case as this, or of sewers or water supply systems, it may extend beyond, and in the case of streets, alleys, parks, museums, auditoriums, or the like, be confined to the physical area of the district.

SLOANE, J., Dissenting.—I concur in the dissenting opinion of Mr. Justice Olney. The only point in dispute is as to the power of the district to vote bonds for an improvement that is not wholly confined in its physical location within the boundaries of the district. The right of this district to incur an indebtedness for a pleasure-pier within its boundaries is not disputed. It appears from the record that in order to project this pier beyond the dry sands of the beach it was necessary to extend it into the ocean beyond the district boundaries. This extension is not upon other taxable territory, but into the tide waters held in trust by the state for just such uses. For all beneficial purposes and use and control it is within the prescribed territory. It is conceded that in the construction of a sewer by such a municipal district the outlet might be lawfully carried to such a distance beyond the corporate boundaries as the necessities of its use requires. This case presents no difference in principle. The extension of the wharf beyond the boundary of the district is absolutely essential to any beneficial purpose for which it is intended. The limitation of the statute applies as much to the one improvement as the other, and the courts may not draw a distinction upon their own estimate of the relative importance of sewers and pleasure-piers.