[Civ. No. 9945. Third Dist. May 24, 1961.]

CITY OF NORTH SACRAMENTO, Respondent, v. CITIZENS UTILITIES COMPANY OF CALIFORNIA (a Corporation), Appellant.

Claude N. Rosenberg, William G. Fleckles and Bacigalupi, Elkus & Salinger for Appellant.

Raymond McClure, Martin McDonough, McDonough & Wahrhaftig and McDonough, Holland, Schwartz, Allen & Wahrhaftig for Respondent.

PEEK, J.—Defendant Citizens Utilities Company appeals from a judgment of condemnation in favor of plaintiff by virtue of which plaintiff acquired defendant's water system.

Defendant is a public utilities corporation serving customers residing within the corporate limits of the plaintiff city and in unincorporated portions of Sacramento County contiguous to the city. The area served by defendant's system comprises approximately 6.6 square miles, of which approximately 25 per cent is within the municipal boundaries of plaintiff. Although the entire water system is operated as a single unit, there was evidence to the effect that the portion lying outside the corporate boundaries of plaintiff could be severed and operated separately. The trial court found, however, that ''All the lands, property, and rights sought in this proceeding, . . . including those located outside the boundaries of plaintiff, comprise a single municipal water system . . .''

The sufficiency of the evidence to support the findings of the trial court is not questioned. Defendant's sole contention is that since a municipal corporation has no inherent power of eminent domain, it may exercise such power only when and to the extent that authority so to do may be derived from express constitutional or statutory grant; and that in any event, such power cannot arise by implication. Therefore, defendant argues that absent any express grant of authority, the plaintiff herein is without authority to condemn that portion of defendant's district situated outside plaintiff's boundaries and hence, the judgment of the trial court must be reversed.

We agree with defendant's argument in support of the first portion of its contention that the rule is well established that language purporting to define the powers of a municipal corporation is to be strictly construed, and that the power is denied where there is any fair, reasonable doubt concerning the existence of the power. (*City of Madera* v. *Black*, 181 Cal. 306 [184 P. 397].)

However, we cannot agree with the remaining portion of defendant's contention, since it is equally well established that the power of eminent domain can arise by implication from the ''powers expressly given.'' (*Southern Pac. R.R. Co.* v. *Southern Calif. Ry. Co.*, 111 Cal. 221 [43 P. 602]; *County of Marin* v. *Superior Court*, 53 Cal.2d 633 [349 P.2d 526].)

Article XI, section 19, of the Constitution of this state pro-

vides in part: "Any municipal corporation may establish and operate public works for supplying its inhabitants with . . . water. . . . A municipal corporation may furnish such services to inhabitants outside its boundaries; . . ."

Section 1238 of the Code of Civil Procedure provides in part as follows:

". . . the right of eminent domain may be exercised in behalf of the following public uses: . . .

"3. . . . ponds, lakes, canals, aqueducts, reservoirs, tunnels, flumes, ditches, or pipes, lands, water system plants, buildings, rights of any nature in water, and any other character of property necessary for conducting or storing or distributing water for the use of any . . . incorporated city, . . . or the inhabitants thereof, . . . or necessary for the proper development and control of such use of said water, either at the time of the taking of said property, or for the future proper development and control thereof, . . .

"4. . . . and lands with all wells and water therein adjacent to the lands of any municipality or of any corporation, or person supplying water to the public or to any neighborhood or community for domestic use or irrigation."

Section 1241 of the Code of Civil Procedure provides that before property can be taken under eminent domain by a city, or certain other enumerated governmental agencies, it must appear that such taking was necessary; that a resolution by the respective legislative body which meets the requirements set forth in said section is "conclusive evidence" of the facts relative to the property to be taken within its boundaries, but is not conclusive evidence of such facts as to "property located outside of the territorial limits" of the city.

Section 38730 of the Government Code provides that: "A city may acquire by gift, purchase, or condemnation, water, water rights, reservoir sites, rights of way for pipes, aqueducts, flumes, or other conduits, and all other property and appliances suitable and proper to supply water for the use of the city and its inhabitants."

Section 40404 of the Government Code further sets forth certain circumstances wherein private property may be condemned and concludes with the phrase, or for "Any other purposes authorized by law."

There can be no question but that by virtue of the constitutional and statutory provisions previously referred to, a city has the power to operate a water system by which it may

supply services to persons living within, as well as those residing without, its boundaries (Const., art. XI, § 19), which obviously is a purpose authorized by law (Gov. Code, § 40404) ; that a municipality may exercise the right of eminent domain (at least within its boundaries) to acquire such a system (Code Civ. Proc., § 1238) ; and that at the outset of the institution of condemnation proceedings the resolution of authorization by the legislative body, although conclusive as to the property to be taken within its borders, is not conclusive as to property to be taken outside its limits (Code Civ. Proc., § 1241). Although in none of the constitutional or statutory provisions referred to is there any express authority granting to a municipality the power given to plaintiff by the judgment of the trial court herein, nevertheless that is not to say that such power cannot be implied ''as incidental to the existence of other powers expressly granted.'' (*Mulville* v. *City of San Diego,* 183 Cal. 734 [192 P. 702].)

In the case of *Harden* v. *Superior Court,* 44 Cal.2d 630 [284 P.2d 9], the supreme court unanimously held that the rule as set forth in the city of Madera case was not absolute, but was subject to the exception that under certain circumstances a municipality may have the implied authority to condemn property outside its boundaries.

Although the court in the Harden case held that the city of Hayward had neither express or implied powers to prosecute eminent domain proceedings against property outside its boundaries for the purpose of automobile parking, the court discussed at length the question here presented. It first referred to the case of *City of Pasadena* v. *Stimson,* 91 Cal. 238 [27 P. 604], wherein the city sought to condemn a right of way for an outfall sewer from the city of Pasadena to a tract of land outside the city limits, and noted that while the power of the city of Pasadena ''. . . to exercise eminent domain outside its corporate limits was not discussed in the opinion, the case inferentially stands for the proposition that it does have the power.'' (P. 638.) The court then continued as follows:

''. . . However, in *Mulville* v. *City of San Diego,* 183 Cal. 734, 737 [192 P. 702], the question of the power of a city to exercise eminent domain outside its boundaries was indirectly involved. It was there said: 'In general, a municipality is competent to act beyond its boundaries only in those cases in which it is so empowered by legislative

authority and it is necessary, in passing upon the validity of acts of a municipality performed beyond its boundaries, to look to the general laws and municipal charter for the requisite authority. In certain instances, owing to the urgency of extreme expediency or necessity, express authority is dispensed with and the power of the municipality to perform certain acts beyond its boundary is implied as incidental to the existence of other powers expressly granted. Thus, it has been held that, where a municipality has power to construct sewers, it may, as an implied incident to such power, extend the same beyond its boundaries when necessary or manifestly desirable. (*McBean* v. *City of Fresno,* 112 Cal. 159 [44 P. 358, 53 Am.St.Rep. 191, 31 L.R.A. 794] ; *City of Coldwater* v. *Tucker,* 36 Mich. 474 [24 Am.Rep. 601] ; *Cochran* v. *Village of Park Ridge,* 138 Ill. 295 [27 N.E. 939] ; 4 McQuillin on Municipal Corporations, § 1434.) McQuillin, in his work on Municipal Corporations, states the rule as follows : ''The general rule is that without legislative grant the authority of the municipal corporation is confined to its own area, hence its acts and ordinances have no force beyond its corporate limits. Thus, in the absence of such grant the municipality cannot open a street, repair a highway, grade an avenue, or aid in the construction of a plank road or bridge beyond its boundaries. Sometimes authority to act outside of the municipal boundaries may be implied on the ground of necessity, as for example, to obtain outlets for sewers and drains. . . . Likewise a municipality possessing power to supply its inhabitants with water, may acquire for that purpose, a water supply without its territory. . . .'' (4 McQuillin on Municipal Corporations, § 1824.)' The court continued: 'Therefore, in the case of a municipality, power to act outside of the boundaries of the municipality is dependent entirely upon legislative grant; it does not exist unless expressly granted, necessarily or fairly implied in or incident to the powers expressly granted, or essential to the declared objects and purposes of the corporation. (*Hyatt* v. *Williams,* 148 Cal. 585, 587 [84 P. 41] ; *South Pasadena* v. *Pasadena Land etc. Co.,* 152 Cal. 579, 590 [93 P. 490].)' ''

To this should be added the further comment found in 11 McQuillin, Municipal Corporations (3d ed. 1949) section 32.66, page 316 :

''. . . it would seem that the rule supported by the better reasoning is that if the power exists to construct public works

or improve property outside the municipal limits, and the statute or charter expressly or by necessary implication authorizes the condemnation of property within the corporate limits for such purposes, then the municipality is impliedly authorized to condemn property outside the limits for such purposes."

In *City of Mill Valley* v. *Saxton*, 41 Cal.App.2d 290 [106 P.2d 455], a somewhat similar situation was presented. There the city sought to operate a bus line between Mill Valley and San Francisco. The court, after noting the same constitutional provision, pointedly noted (p. 293) : "If a city is endowed with the power to sell excess utility service, the means of performance whereby the service can be made and supplied are necessarily implied in the grant of power to sell." ▇ Paraphrasing what the court there held, as it applies to the present case, it can be said that where a city is specifically endowed with the power to condemn a water system within its boundaries and to condemn wells and the water on lands adjacent to the city, and to provide water service to persons both within and without its boundaries, then, bearing in mind the other statutory provisions having a direct relation thereto and in amplification thereof, the means whereby such service can be made and supplied are necessarily implied in the grant of power; and hence, plaintiff herein was impliedly authorized to condemn that portion of defendant's water system outside plaintiff's territorial limits.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 19, 1961. Peters, J., was of the opinion that the petition should be granted.