[L. A. No. 2275. In Bank.—December 24, 1909.]

LEE EALENOR GRAHAM et al., Respondents, v. JOHN W. BAILARD, Road Commissioner of Road District No. 1, County of Santa Barbara, and the CITY OF SANTA BARBARA, Appellants.

PUBLIC HIGHWAY—DESCRIPTION BY LINE ALONG ITS LENGTH—MINIMUM WIDTH.—Where an order of the board of supervisors describes a road constituting a public highway merely by a line along its length, the width of the road will be deemed to be the minimum width prescribed by statute, in the absence of anything showing to the contrary.

ID.—LINE PRESUMED TO BE ALONG CENTER OF ROAD.—In the absence of anything to indicate a contrary intention, such line will be deemed to refer to the center line of the road. The intention to have the line mark a side of the road may appear from other parts of the description.

ID.—CONSTRUCTION OF DESCRIPTION—SIDE-LINE.—In determining the location of the road in question it is held, that the description contained in the order establishing it, considered in connection with the viewers' reports and map to which it refers, shows that the line given was intended to mark the northern and western line of the road, and that, where it adjoined the plaintiffs' land, it was not intended to limit its width by the natural objects referred to in the description.

ID.—FAILURE TO USE ENTIRE ROAD NOT AN ABANDONMENT.—Where a highway is legally established by proper proceedings, the mere fact

that the ground has not been graded and made fit for travel to the entire width does not amount to an abandonment of the portion not used.

ID.—HIGHWAY PROCEEDINGS MUST BE STRICTLY PURSUED.—In acquiring private property for highway purposes, against the will of the owner, the authority granted to a board or tribunal must be strictly pursued, and an order purporting to open a road in such a case is void unless the requirements of the statute have been substantially complied with.

ID.—LAND ATTEMPTED TO BE TAKEN WITHOUT OWNER'S CONSENT— LACK OF COMPENSATION OR CONDEMNATION.—An order establishing a road is invalid, in so far as it attempts to appropriate land against the owner's consent, without compensating him for the damages accruing to him, or proceedings to condemn the land as required by the statute.

ID.—CONSENT TO PORTION OF ROAD—REPORT OF VIEWERS—ACCEPTANCE OF REPORT—ESTABLISHMENT OF ROAD—CONSTRUCTION OF ORDER.— Where the report of the viewers showed that a certain landowner only consented to one half of the width of the road, and that a road of the minimum width of fifty feet would damage him materially, an acceptance of the report by the supervisors implied an approval thereof, and their order establishing the road, without compensation to him, will be construed as establishing it, so far as it affected his property, only of the width to which his consent was given.

ID.—ROAD LESS THAN MINIMUM WIDTH — COLLATERAL ATTACK ON PROCEEDINGS.—Proceedings establishing a public highway cannot be collaterally impeached on the ground that it was of less width than the minimum prescribed by law, especially where the road has been constructed and traveled and acquiesced in for a long period of years.

ID.—USE OF ESTABLISHED ROAD—DEDICATION—PRESCRIPTION—The actual use of a road for highway purposes, within the limits fixed by the order establishing it, cannot be made the basis of a claim for a road of greater width either by dedication or by an easement acquired by prescription.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order refusing a new trial. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

W. P. Butcher, City Attorney, H. C. Booth, and E. W. Squier, for Appellants.

W. S. Day, for Respondents.

CLVII Cal.—7

ANGELLOTTI, J. — The plaintiff Lee Ealenor Graham owning a tract of land in the county of Santa Barbara, commenced this action against the defendant Bailard, as road commissioner, to enjoin him from digging into and cutting away certain points and banks of land upon the side of a road adjoining plaintiff's land. The question in dispute is whether the location of the proposed work is on plaintiff's land or whether it is within the limits of a public highway. Since the commencement of the action, the boundaries of the city of Santa Barbara have been extended so as to include this territory, and the city has been joined as a party defendant.

The land owned by Mrs. Graham is a tract of some twenty-three acres. It consists of the westerly end of a mound or hill, sloping more or less abruptly to the north, west, and south. On the south it is bounded by the Santa Barbara Channel. A road, known as the East Boulevard, runs easterly along the shore of the channel from the city of Santa Barbara, until it strikes a point on the westerly front of the mound, there connecting with a road which skirts the foot of the mound along its westerly and northerly sides, and runs, in part, between the mound and a salt pond. The work proposed to be done by the defendants is the cutting off and leveling of portions of the hill, consisting of points or projections of earth adjoining this latter road, with a view to elevating and widening the road.

The complaint alleges that these points or projections are within the limits of Mrs. Graham's property. The answer asserts that they are within the boundary lines of the highway. The road as actually marked out and traveled upon the ground does not include the ground in dispute. The defendants allege, however, that there was a legally established highway of a width sufficient to include it, and base their claim in this regard upon the creation of such highway,—1. By proceedings taken under section 2681 et seq. of the Political Code; 2. By dedication; and 3. By prescription. The court found that there never had been any road laid out or established either by judicial or legislative action, or acquired by dedication or prescription over the premises of the plaintiff other than the present road as now opened, maintained, and traveled. Judgment was entered, enjoining the defendants as prayed in the complaint. The defendants appealed from the

judgment within sixty days after its entry, and bring up the evidence by means of a bill of exceptions.

It is urged that the evidence fails to support the findings. While the appellants contend for a highway both by dedication and by prescription, they rely in the main upon the position that the highway, to the extent claimed, was established as the result of proceedings taken by the board of supervisors.

The findings in regard to this, in addition to the general finding set forth above, are that on the twenty-first day of July, 1877, the board of supervisors made and entered an order declaring certain land to be a public highway, and directing the roadmaster to open the same, "that said road as declared, laid and established was not of the uniform width of fifty feet, nor was it entirely on the southeast side of the said line" (the line described in said order), "but was bounded by the salt pond on the northerly and westerly sides and the foot of the hill on the southerly and easterly sides," that a road was thereupon laid out in full accord with said order which has ever since been well defined and open and worked for its full width, but none of the projections and points of earth upon which defendants are alleged to be trespassing are within said road "as declared or as laid out," that said board by said order "did . . . establish and cause to be located a public highway," but that the same was the road as actually laid out on the ground and worked and traveled, and no other. These findings must be read in connection with the general finding first quoted, and show what was meant by the court when it found that there had never been any road laid out or established on the premises of Mrs. Graham other than the present traveled road.

All these findings are attacked by defendants. It is apparent that such findings concede and establish for all of the purposes of this appeal the validity of all of the proceedings for the establishment of a public highway, to and including the order purporting to declare the same. On this appeal by defendants from a judgment in favor of the plaintiffs, plaintiffs are not, of course, in a position to question the correctness of these findings. For the purposes of this appeal, they must concede that the findings conclusively establish a valid order declaring a public highway. Defendants claim that the public highway as described in the order includes more than the land

now actually worked and traveled as a public highway. The findings of the trial court are against them on this proposition, being in effect, as we have seen, that the highway described in the order is the road actually laid out and used and traveled on the ground, and that it included no more ground. The only question is, then, What land did the description in the order include? We are satisfied that the findings of the trial court upon this particular question are not. sustained by the evidence.

The description of the road, as contained in the order, is as follows: "Commencing at a point from which the northwest corner of the Santa Barbara cemetery bears south thirty-seven links distant, Thence 1st. S. 50¾° W. 8.53 chains thence 2d S. 75¼° W. 6.51 chains to a stake from which an oak tree one foot in diameter bears S. 32¼ W. 74 links distant thence along south side of Salt Pond the north foot of the hill. 3d S. 80⅜° W. 2.65 chains to a stake. 4th. S. 85° W. 2.48 chains to a stake. 5th. S. 85¼° W. 7.50 chains to a stake. 6th. S. 77¾° W. 1.95 chains to a stake, being a stake set in the partition of the estate of George Nidever deceased. 7th. S. 44° W. 4.50 chains to a stake. 8th S. 19¾° W. 5.03 chains to a stake. 9th S 8¼ W to high water mark of the Santa Barbara Channel, as surveyed by A. S. Cooper whose report accompanies papers on file, and map of the proposed road."

The width of the road in feet is not stated in the order, the whole description therein being as above set forth. Defendants' claim is that the order did not attempt to define its width, but only a line along its length. This is permissive in highway proceedings where a minimum width of highway is prescribed by statute. Where a road is so described, it will be deemed to be a road of the minimum width prescribed by statute in the absence of anything showing to the contrary. (2 Elliott on Roads and Streets, sec. 381; *Crowley* v. *Board of Commissioners*, 14 Mont. 292, [36 Pac. 313]; *Hentzler* v. *Bradbury*, 5 Kan. App. 1, [47 Pac. 330]; *Willis* v. *Sproule*, 13 Kan. 257. At the time of these proceedings, section 2710 of the Political Code provided that all highways must be at least fifty feet wide excepting those now existing of a less width. A single line of length being given and the width being determined, the exact location of the road cannot be fixed until it is known whether the line described marks the center, or one or the other side of

the road.  In the absence of anything to indicate a contrary
intention, such line will be deemed to refer to the center line of
the road.  (*Freshour* v. *Hihn,* 99 Cal. 443, [34 Pac. 87].)  The
intention to have the line mark a side of the road may appear,
however, from other parts of the description.  (15 Am. &
Eng. Ency. of Law, 7th ed., p. 384; *McDonald* v. *Payne,* 114
Ind. 359, [16 N. E. 795] ; *Freshour* v. *Hihn,* 99 Cal. 443, [34
Pac. 87].)  Defendants further claim that it clearly appears,
when the description is considered in connection with the view-
ers' reports and map to which it refers, that the line given was
intended to mark the northern and western line of the road,
and that the whole of the road lies to the south and east there-
of.  The claim of plaintiffs, sustained to the letter by the
findings, is that the order described a road limited in width
by the "south side of the Salt Pond" on the one side and the
"north foot of hill" on the other.  The latter construction, as
the evidence very clearly shows, will give a strip of very ir-
regular width, in many places several feet less than twenty-
five feet.

The claim of plaintiffs in this regard is based entirely on
the words "thence along south side of Salt Pond the north foot
of hill," following the second course and forming, apparently,
a part of the description of the third course.  They say, and
the court found, that this is a limitation of width and was
intended to define a road which should be bounded on the one
side by the edge of the pond and on the other by the foot of
the hill.

We do not find any reasonable support for the latter con-
struction.  It is not reasonable to suppose that the surveyor,
in laying out a road, intended to define the width of a small
part only of the road, leaving the other undefined, or that the
viewers, or the supervisors, in adopting this description, in-
tended to make any such limitation.  The construction sought
to be placed on these words by plaintiffs is not even the natu-
ral and reasonable interpretation.  They appear to be only
additional terms showing the course and direction of the line
of the road, serving to make more certain by reference to
fixed natural monuments.  The documents referred to and, in
effect, made a part of the order, i. e. the report of the sur-
veyor and the map attached to the report of the viewers,
clearly show that plaintiffs' construction is without support,

and also that the line described was the northerly and westerly line of the road. The map shows the nine stations referred to in the field-notes, and a series of straight lines, in black, connecting them. South and east of these lines and parallel to them are a series of similar lines marked in red ink. The locations of these lines on the map indicate, at a glance, that they are meant to mark the sides of the road, and that the black lines (i. e. those referred to in the field-notes) represent the northerly and westerly boundary, and the red the southerly and easterly boundary of the proposed road. The map further shows that the red lines were so drawn as to indicate a road fifty feet in width the whole length. The viewers' report had annexed to it the written consent of Jarrett T. Richards, then the owner of the westerly and larger part of plaintiffs' property, that a road twenty-five feet in width be located over his property "southeast of the line run by the surveyor, shown on map by black line," and his statement that he would claim no damage therefor, but that he protested against the creation of the road "as made by the viewers." In their report, the viewers, stating as required by the law the names of landowners who consent, said that Jarrett T. Richards consented "to ½ of the width." They further said "we consider the twenty-five feet in width consented to by Mr. Richards to be an ample width. If a road was made fifty feet in width it would damage Mr. Richards' property materially." The description in the petition for a road does not materially tend to support plaintiffs' claim. In the light of all this it is impossible to come to any other conclusion than that the description in the order was simply a description of the northerly and westerly line of the proposed road. Whether the road thus described in the order was a road fifty feet or twenty-five feet wide throughout its entire length, or a road fifty feet wide except in front of Mr. Richards's property, and there only twenty-five feet wide, is another question, the determination of which is not material to the particular question we have been discussing. In any event, the findings already referred to are unsupported by the evidence, and as they are essential to the judgment on the record on this appeal, the judgment must be reversed. It is well settled that where a highway is legally established by proper proceedings, the mere fact that the ground has not been graded and made fit for

travel to the entire width does not amount to an abandonment of the portion not used. (*Moore* v. *Roberts,* 64 Wis. 538, [25 N. W. 564]; *McClelland* v. *Miller,* 28 Ohio St. 488; *Wolfe* v. *Sullivan,* 133 Ind. 331, [32 N. E. 1018]; *Humphreys* v. *Mayor,* 48 N. J. L. 588, [7 Atl. 301]; *Hentzler* v. *Bradbury,* 5 Kan. App. 1, [47 Pac. 330].)

Upon a new trial, the question of the exact width of the road will probably be an important one, as well as the question of the validity of the order whether it be construed as purporting to establish a road fifty feet wide on the property formerly owned by Richards, or a road only twenty-five feet wide on the Richards property and fifty feet wide elsewhere, or a road twenty-five feet wide throughout.

It is clear to us that the order must be held invalid in so far as it may purport to appropriate in front of Richards's property more than twenty-five feet in width lying south and east of the line described. In acquiring private property for highway purposes, against the will of the owner, the authority granted to a board or tribunal must be strictly pursued, and an order purporting to open a road in such a case is void unless the requirements of the statute have been substantially complied with. (*Damrell* v. *Board of Supervisors,* 40 Cal. 154; *County of Sonoma* v. *Crozier,* 118 Cal. 680, 682, [50 Pac. 845].) It affirmatively appeared on the face of this order that Mr. Richards had consented and waived damages only so far as appeared by the report of the viewers. Under the road law, the viewers were required to report an estimate of the damage to the owners of the lands over which the road was to run, the names of the landowners who consented to give the right of way with their written consent, and the names of the landowners who did not consent. They reported that Mr. Richards consented only "to ½ of the width," and that a road fifty feet wide would damage him materially. His own writing annexed was a vigorous protest against more than twenty-five feet, and a consent only to the taking of twenty-five feet. The road law further provided that where owners did not consent, the board of supervisors should fix the amount of damages to be awarded them, and set the same apart in the treasury for them, and that if they accepted the same the board might then make an order declaring the public highway, but if any owner should not accept, a condemnation suit might

be brought, and when the title was acquired the order declaring a highway might be made. In this proceeding, the board made the order on the theory that Richards was a consenting owner and without making any allowance whatever for the damage accruing to him. Of course, they could not take any of his property without his consent, in this way, and any order purporting to do so would be invalid. The provisions of the road law stating these requirements were designed to safeguard the owner against any violation of his constitutional rights, and substantial compliance with them was essential to a valid order taking his property. Richards's written consent to the taking of a road twenty-five feet wide would probably estop him and his successors from alleging any invalidity in the order so far as that width is concerned, especially now that a road has been constructed.

But we do not think that the order should be construed as purporting to take more than twenty-five feet in width along Richards's property. To so construe it would attribute to the board of supervisors an intention to take a portion of his property against his consent without compensation. The viewers' report was clear and explicit so far as their intention in the matter was concerned. They said that they considered the twenty-five feet in width consented to by Mr. Richards to be "an ample width," and that to make the road fifty feet in width would damage him materially, and it was clearly on that theory that they made him no allowance for damages. The law requires that the board of supervisors should approve or reject the viewers' report, and provided that if they approved it they may proceed in the matter of opening the road. They did order the report "accepted," and so proceeded, all of which necessarily implies an approval of the report. This conclusion involves, of course, the holding that the board intended to make a road of less width, in part at least, than the minimum prescribed by law, the contrary of which should be presumed in the absence of a showing otherwise. We are of the opinion that the record of the proceedings does so show.

It is suggested that an order declaring a public highway of less width than the minimum prescribed by law would be void. While such an objection might be effectual in a proceeding seasonably brought, we think the more reasonable view to be that the proceedings may not be impeached for this reas-

on on a collateral attack, especially when the road has been constructed and traveled and acquiesced in for a long period of years.   (See 2 Elliott on Roads and Streets, sec. 381.)

We are further of the opinion in the light of the record that the limitation as to width can be regarded only as applying exclusively to the Richards property.   If we are correct in our views as to the proper construction of the order, it is clear that there can be no force in the claim that there has been any dedication or acquirement of an easement by prescription as to any of the Richards property more than twenty-five feet from the line described in the order, except in so far as any of such property is included in the road as actually used for highway purposes.

There is no other matter that requires attention for the purposes of a new trial.

The judgment is reversed and the cause remanded for a new trial.

Shaw, J., Sloss, J., Lorigan, J., and Melvin, J., concurred.