[Civ. No. 714.   Third Appellate District.—December 9, 1910.]

# COUNTY OF SACRAMENTO, Respondent, v. PETER GLANN et al., Appellants.

PUBLIC HIGHWAY—ACTION TO CONDEMN LAND—PLEADING—JURISDICTION —FINDING OF SUPERVISORS ON REPORT OF VIEWERS—APPARENT OWNERSHIP—COLLATERAL ATTACK.—In an action to condemn land for a public highway, where the facts showing a compliance of the board of supervisors with the statute are affirmatively pleaded in the complaint so as to warrant the proceeding and to show that the money had been set apart out of the proper fund to pay the damages awarded by the viewers, a finding by the supervisors, upon the report of the viewers, as to the apparent ownership of certain land taken, was within the jurisdiction of the board, and cannot be collaterally assailed to defeat the proceeding, on the ground that the person in possession, as apparent owner, in fact represented himself individually, and two estates of which he was executor.

ID.—POWER OF BOARD TO ADJUDICATE JURISDICTIONAL FACTS—CONCLUSIVENESS AGAINST COLLATERAL ATTACK.—An inferior board may determine conclusively its own jurisdiction or power by adjudicating the existence of facts upon which its jurisdiction or power depends. In all cases where private property is required for highway purposes, it is the province and duty of the board of supervisors to determine conclusively, as against a collateral attack, all facts affecting its jurisdiction to authorize the institution of a condemnation suit, including the necessity for the use, its public character, the route and terminus of the road, the land necessary therefor, its apparent ownership, and the matters of fact passed upon in approving the report of the viewers.

ID.—VIEWERS ONLY REQUIRED TO SHOW APPARENT OWNERSHIP.—While the finding of the viewers and of the board as to ownership is final as far as constituting a basis for new or further proceedings, yet the viewers are not required to be sufficiently familiar with the facts and the land to determine with precision who is the owner of the property, or to adjudicate title, which is a question for the superior court. The viewers are only required by the statute to act in good faith and report the apparent ownership of the property. They serve notice upon the occupant of the property and report their findings as to who is the apparent owner.

ID.—MISTAKE OF VIEWERS AS TO OWNERSHIP—OBJECTION WAIVED— CORRECTION BY SUIT—APPELLANTS NOT PREJUDICED.—Appellants were not prejudiced by the mistake of the viewers in supposing that the party in possession was the sole owner of the property and in not segregating the amount of compensation allowed to him

individually from interests represented by him as executor, where he, as such owner and representative, personally knew of the acts of the viewers, and made no complaint, but rejected the award without demanding any segregation of the compensation to the different interests represented by him; but, upon suit brought, such represented interests were set forth and determined according to the facts, and the damages were apportioned to the respective owners.

ID.—IRREGULARITY NOT AFFECTING SUBSTANTIAL RIGHTS.—At most, the fact that the viewers were misled as to the ownership of the property was, under the circumstances, a mere irregularity not affecting the substantial rights of the parties.

ID.—CAUSES OF ACTIONS NOT MISJOINED.—The causes of action in the condemnation proceedings in favor of the county against the defendant individually and the interests represented by him as executor were not misjoined. Causes of action in condemnation proceedings are governed by section 1244 of the Code of Civil Procedure, which allows a joinder of all parcels lying in the county required for the same public use, in one action, at the option of the plaintiff, subject to the power of the court to consolidate separate actions or to require separate trials.

ID.—STATUTORY CONSTRUCTION—INTENTION OF LEGISLATURE—ORDINARY AND POPULAR SENSE OF TERMS.—In construing section 1244 of the Code of Civil Procedure, effect must be given to the intention of the legislature, to be determined primarily by attributing the ordinary and popular sense to its terms, in the absence of any technical expression therein.

APPEAL from a judgment of the Superior Court of Sacramento County.   Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

George & Hinsdale, and White, Miller & McLaughlin, for Appellants.

Eugene S. Wachhorst, District Attorney, A. M. Seymour, Hugh B. Bradford, and R. Platnauer, for Respondent.

BURNETT, J.—The appeal is from a judgment in favor of the county of Sacramento condemning certain land for a public highway.   The land is located partly in the S. E. ¼ of section 9 and partly in the S. W. ¼ of section 10, T. 5 N., R. 5 E., M. D. M.   The said S. E. ¼ was owned by Peter Glann, the estate of Vincent Glann, deceased, and the estate

of Daniel Glann, deceased, in equal undivided shares, and the S. W. ¼ belonged to the said estates in equal shares. The action was brought against Peter Glann, individually, and in his representative capacity as executor of each of said estates. The judgment awards to each of the defendants the value of his respective interest in the land condemned and his proper proportion of the damage accruing to the part of the land not sought to be condemned by reason of the severance from the portion condemned and the construction of the road in the manner proposed by plaintiff. It is not disputed that the proceedings before the board of supervisors prior to the report of the viewers were entirely regular, but by reason of said report and the action taken thereon, it is claimed that the supervisors were deprived of jurisdiction to proceed any further toward condemnation. The basis for the contention lies in the fact that the viewers reported Peter Glann as the owner of the land and designated him as the one to whom the entire damage should be paid for the taking of the property and the construction of the fence. After estimating the amount which should be paid him, they further declared that "Peter G. Glann, over whose land the proposed road is located, opposes the opening of the same, and declines to state the amount of damage to which he would be entitled for the right of way. It will be necessary, therefore, to condemn the right of way required." The board of supervisors approved said report and ordered that "The amount of damages sustained by Peter Glann, a nonconsenting land owner through whose lands said road runs, is the sum of $623.50, and said sum of $623.50 is hereby awarded to said Peter Glann as such damages. It is further ordered that said sum so fixed and assessed as the amount of damage to said Peter Glann shall be set apart in the county treasury out of the funds of road district No. 5, to be paid to said Peter Glann." The rightful ownership of the land was set forth in the pleadings and the jury found that "the value of the land sought to be taken by the plaintiff in the S. E. ¼ of section 9 is $50 per acre and the damage to the lands not taken in said S. E. ¼ is five dollars per acre and the value of the land sought to be taken by the plaintiff in the S. W. ¼ of section 10 is fifty dollars per acre and the damage to the lands not taken in said S. W. ¼ is nothing." The number of acres taken in each quarter section

appeared and the cost of the construction of the fences was
stipulated.   The findings and decree of the court followed in
accordance with the verdict of the jury and the admitted
facts.

Of the two main contentions of appellants, the first is that
the board of supervisors should have segregated and set apart
to each of the two estates in question the amount to which said
estate was entitled, and that "in the absence of such ascer-
tainment, assessment, award and tender, such board was
absolutely without jurisdiction to make an order establishing
the road or enter the order directing this suit to be brought
. . . and there being no valid order establishing the road or
directing this action to be brought, no right of action arose
in favor of the county, against the estate of Daniel Glann,
the estate of Vincent Glann or the successors in interest of
either of them."   In support of the position are cited *County
of Sonoma* v. *Crozier,* 118 Cal. 680, [50 Pac. 845], *County of
Sutter* v. *McGriff,* 130 Cal. 127, [62 Pac. 412], and *Graham*
v. *Bailard,* 157 Cal. 96, [106 Pac. 215]. .

In the first of these was involved a question of pleading, and
it was held that "a complaint in an action by a county to
condemn the land of the defendant for a private way, which
merely avers the filing of a sufficient petition and the giving
and approval of the bond, and that afterward such proceed-
ings were had that on a day specified, the board of supervisors
of the county, by order duly given and made, directed the
district attorney to institute condemnation proceedings, but
which fails to state that viewers were appointed, or that they
proceeded to lay out the road, or that they made or filed any
report, or that the report was approved, or that damages
awarded had been tendered to defendant and refused by him,
fails to state a cause of action."   The respondent in that case
contended that the foregoing allegations were not necessary,
for the reason that section 2690 of the Political Code makes
the order directing suit to be brought conclusive as to the
regularity thereof, but the supreme court declared that facts
must be alleged showing that the board of supervisors had
jurisdiction to make said order and that said provision was
not intended to obviate the necessity of pleading or proving
the jurisdictional steps but it must be understood as rendering
mere irregularities harmless when it appears that the board

has the jurisdiction to make the order. No such question can arise here, as the facts showing the compliance of the board with the requirement of the statute are fully pleaded so that it affirmatively appears by the allegations of the complaint that the board of supervisors acted within their statutory authority in making the order directing the district attorney to begin condemnation proceedings.

The judgment in the McGriff case, *supra,* was reversed for the reason that there was an entire failure of the evidence to show that there was any compliance with the order of the board directing that the amount of the damages assessed and awarded be set apart in the treasury of the county "out of the proper fund" to be paid in accordance with law. The supreme court properly said: "The statutory provisions relative to this matter provide a special form of tender which must be made to the land owner before suit in condemnation may be begun. It is essential, since the law has prescribed it, that the requisites of such tender shall be strictly complied with. In effecting the tender it is required that the amount of money shall be absolutely set apart in the treasury and held for the full period of ten days subject to the demand of the rightful owner of the land." It was admitted by respondent that there was no evidence that the money had been set apart and thereby made available for the payment of the damages awarded, and the only reason urged by respondent why the point should not be accorded decisive significance was that it would be presumed that the treasurer had done his duty. To this suggestion the court very aptly made reply that "No presumption can be indulged in to the effect that at the time of the order there was actually money in the proper fund sufficient and available for the indicated purposes." It is well to observe that the sequestration of the money in the treasury is an important step in the proceeding, and no owner of property should be held in default and subject to an action of condemnation until he has been tendered the money to which the viewers have found that he is entitled. The decision is not controlling here, however, for the reason that the vital question involved therein was for the court and not for the board of supervisors and an indispensable prerequisite to condemnation had not been complied with, whereas in the case at bar, as we shall see presently, the point in dis-

pute was within the jurisdiction of the board of supervisors to determine beyond attack in this proceeding, and there was, as a matter of fact, a sufficient compliance with the statutory provisions upon the part of the viewers and of said board.

The question involved in *Graham* v. *Bailard,* 157 Cal. 96, [106 Pac. 215], and which led to a reversal of the judgment, was the construction of an order made by the board of supervisors and particularly as to what land the description in the order included. In the course of the opinion, the court reasserted some familiar principles in relation to the exercise of the authority conferred upon inferior tribunals and stated that an order by a board of supervisors purporting to open a road is void unless there has been a substantial compliance with the requirement of the statute, but this was merely incidental to the holding that the board intended to adopt the report of the viewers recommending a road of twenty-five feet in width, since it appeared that the said report was clear and explicit so far as the intention of the viewers was concerned and that the said board ordered the report accepted and "so proceeded, all of which necessarily implies an approval of the report."

But here appellants seek to attack collaterally a finding of the board of supervisors made within their jurisdiction and which if not final for the purpose of determining the necessity for a public highway and as preliminary to the order directing condemnation, is at least beyond the reach of review in this proceeding.

In *Re Grove Street,* 61 Cal. 453, it is said: "An inferior board may determine conclusively its own jurisdiction or power by adjudicating the existence of *facts* upon the existence of which its jurisdiction or power depends. Where, however, the power depends, not upon the existence or non-existence of matters *in pais,* to be established by evidence, but upon allegations in a petition, a portion of the record, the question is not the same."

In discussing the duty of the board of supervisors in reference to the subject before us, it is said, in *Tehama County* v. *Bryan,* 68 Cal. 63, [8 Pac. 676], that "By section 1241 it is provided that 'before property can be taken, it must appear— 1. That the use to which it is to be applied is a use authorized by law. 2. That the taking is necessary to such use.' It is

14 Cal. App.—50

the province and is made the duty of the board of supervisors to decide these questions in all cases where private property is required for highway purposes. The necessity of the use, its public character, the route and termini of the road, the land necessary therefor and the apparent ownership thereof, are to be determined by that body before steps can be initiated in the courts for its condemnation for road purposes.''

In *Humboldt County* v. *Dinsmore,* 75 Cal. 609, [17 Pac. 710], it is held that the board of supervisors in approving the report of the viewers acted upon matters of fact within their jurisdiction to determine, and that their determination cannot be assailed collaterally.

In considering the authority of the board of supervisors to pass upon a petition for the establishment of a highway, the supreme court, in *Levee District No. 9* v. *Farmer,* 101 Cal. 181, [35 Pac. 570, 23 L. R. A. 388], declares that ''as to all facts tending to show whether the power of the board ought or ought not to be exercised, either by granting or denying the petition in whole or in part, the board exercises judicial functions and its judgments are final and cannot be attacked collaterally, but may be reviewed upon *certiorari* when the jurisdiction of the board has been exceeded.''

In *Johnston* v. *Board of Supervisors,* 104 Cal. 393, [37 Pac. 1047], is discussed the effect of an order by the board approving the report of the viewers, and it is therein said: ''I think it clearly appears that by virtue of this provision of the code (Pol. Code, sec. 2688), the board acquired jurisdiction to hear and determine all questions relating to the report of the viewers and to approve or reject that report either wholly or in part. That report was regular and valid upon its face, and the only question raised in regard to it was whether or not it was true—a question of fact to be resolved according to the weight of evidence. If, as contended, the conclusion or finding of the board upon this issue was contrary to the evidence, it was merely an error committed in the exercise of unquestionable jurisdiction, and is therefore beyond the reach of a writ of review.''

In *People* v. *Los Angeles,* 133 Cal. 342, [65 Pac. 749], the question of jurisdiction of inferior tribunals is discussed at length, the foregoing cases and other authorities to the same effect are cited with approval, and it is further declared that

in such instances "a mere error in the adjudication of a question of fact, not procured by fraud, extrinsic or collateral to such question, is not a ground upon which it may be vacated, since if it were, no adjudication of a question of fact would ever become final, so long as new evidence could be had, or a different conclusion be reached upon the same evidence."

Section 2686, Political Code, provides what the report of the viewers shall contain and includes "the names of land owners who do not consent, and the amount of damage claimed by each." The only objection to the report made in the case at bar is that the viewers made a mistake as to the ownership of a part of the land. It was a very natural mistake, as they probably found Peter Glann, as he was entitled to be, in possession of all the land, and it is a fair inference also that he declined to give the viewers any information as to the title, as he declined to state the amount of damage which he believed he would suffer by reason of the proposed highway. At any rate, under the decisions, the finding of the viewers and of the board as to the ownership was final as far as constituting a basis for further proceedings is concerned, and any other view would be exceedingly unreasonable. According to the claim of appellants, the viewers must be sufficiently familiar with the facts and the law involved therein to determine with precision who is the owner of the property, although it may be the subject of litigation and require an intimate acquaintance with legal principles appertaining to land titles to enable one to solve the question. The law is not so exacting. The true view undoubtedly is that if the viewers act in good faith and report the *apparent* ownership they have satisfied the requirement of the statute. They do not, of course, adjudicate the question of title, as that is for the superior court, but they serve notice upon the occupant of the property and report their finding as to who is the apparent owner. This was done herein and the money set apart in accordance with their recommendation. There could be no segregation of this amount unquestionably, since it was mistakenly supposed that Peter Glann was the sole owner.

If we go a step further, it is perfectly clear that appellants were not prejudiced by reason of the mistake made by the viewers. Service was made upon the occupant in possession

by virtue of his own right and as the representative of the other interests. In other words, the owner of an interest and the agent of the other interests had personal knowledge of the acts of the viewers. He made no complaint, rejected the award and made no demand that it be segregated. Suit was brought and the ownership was determined in accordance with the facts and the damages were apportioned to the respective owners. At most it would therefore seem to be a mere irregularity not affecting the substantial rights of the parties that the viewers were misled as to the ownership of the property.

We feel satisfied, though, that the question was within the jurisdiction of the board and not reviewable in this proceeding, and that if it could be considered here there was a substantial compliance with the requirement of the statute and therefore appellants have no ground for complaint.

Respondent also contends that the sufficiency of the proceedings of the board of supervisors had prior to the making of the order directing the district attorney to institute the action to condemn cannot be considered at all in this action. Authorities are cited in support of the position, among them the *County of Santa Barbara* v. *Yates,* 13 Cal. App. 44, [108 Pac. 726], wherein it is said: "The order directing the district attorney to institute the action is in the nature of a judgment adjudicating upon the sufficiency of all prior proceedings requisite to the making of the order. If the proceedings be irregular, or any essential step therein wanting, objection thereto should be taken by obtaining a review upon *certiorari* of such proceedings in the proper court." But we deem it unnecessary to discuss the point as we are satisfied with the soundness of the other ground hereinbefore considered.

It is also claimed that there is a misjoinder of causes of action, in that a cause of action to condemn a right of way across lands of Peter Glann cannot be joined with a similar cause of action affecting the lands of Vincent Glann or Daniel Glann, or those who succeeded to his estate. Herein reliance is had upon the general rule as embodied in sections 382 and 427 of the Code of Civil Procedure providing for the joinder of causes of action. There is no controversy, however, as to the general rule, but it is insisted by respondent that the case of condemnation proceedings is governed by a special provision which authorizes the course herein pursued. In this we

think respondent is clearly right. As appellants declare, "the problem to be solved is one of statutory construction, pure and simple." It is not disputed that it is competent for the legislature to provide that such actions may be joined in one proceeding and it appears that this has been effected in the enactment of section 1244 of the Code of Civil Procedure providing what the complaint must contain, among other things, in subdivision 5, "a description of each piece of land sought to be taken and whether the same includes the whole or only a part of an entire parcel or tract. All parcels lying in the county, and required for the same public use, may be included in the same or separate proceedings, at the option of the plaintiff, but the court may consolidate or separate them to suit the convenience of parties." If the legislature had intended to limit the option to cases where *all the parcels* belong to *all* the defendants, it seems singular that it was not so expressed. We are required, of course, to give effect to the intention of the legislature, and that intention is to be determined primarily by attributing the ordinary and popular sense to the terms used, since there is no technical expression employed in the said provision. In doing this we necessarily reach the conclusion that the section covers a case like the one before us, since it is admitted that all the parcels lie in the county of Sacramento. There is another consideration justifying this view which is suggested by respondent, to the effect that if said subdivision 5 be construed as urged by appellants its enactment was entirely unnecessary, as sections 382 and 427 of the Code of Civil Procedure permit such a joinder. At any rate, we cannot say that "all parcels" mean only some of the parcels. Nor do we see any difficulty in the application of this rule to the trial of actions. Even if all the parcels belonged to the same defendant, it would be necessary to submit the evidence and make separate findings as to each of the parcels. Although there may be more than one defendant, the rights and claims of all may be protected and adjusted in one proceeding, but, if deemed advisable, the court may require separate trials. We can see nothing in this construction of the provision of which anyone can justly complain.

In *County of San Luis Obispo* v. *Simas,* 1 Cal. App. 175, [81 Pac. 972], the order of the trial court in refusing separate

trials was challenged, and it was therein held that "the discretionary power as to separation being vested in the trial court, and no abuse being apparent, its order will not be reviewed." The court assumed that there was no question that said section includes the case of several defendants owning different parcels in the same county.

There are other points made by appellants, but they are mostly incidental to what we have already considered. We have examined all of them and do not find any prejudicial error.

We do not think it would be in furtherance of justice to hold with appellants and the judgment is, therefore, affirmed.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 7, 1911.